**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Jane Doe 11,

        Plaintiff,

v.

Henry Jarecki,

        Defendant.

_____

Case No.: 1:24-cv-04208
Hon. John P. Cronan

**PLAINTIFF JANE DOE 11'S MEMORANDUM OF LAW IN**
**OPPOSITION TO DEFENDANT HENRY JARECKI'S MOTION TO DISMISS**
**<u>OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT</u>**

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................................... 1

FACTUAL BACKGROUND ............................................................................................... 2

ARGUMENT ...................................................................................................................... 5

I.      Plaintiff Adequately States A Claim Under The TVPA. ....................................... 5

        A.      Plaintiff Sufficiently Alleges A Commercial Sex Act. ............................. 6

        B.      Plaintiff's TVPA Claim Is Timely. ........................................................... 9

        C.      Equitable Tolling Also Renders Plaintiff's Claims Timely. .................... 12

                1.      Plaintiff alleges diligent pursuit of her claims. .......................... 12

                2.      Plaintiff identifies extraordinary circumstances that justify equitable
                        tolling. ......................................................................................... 12

II.     Plaintiff's State Law Claims Are Valid And Should Not Be Dismissed. ............ 13

III.    Jarecki's Request For A More Definite Statement Is Unwarranted. .................... 15

CONCLUSION ................................................................................................................. 17

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ardolf v. Weber*,
   332 F.R.D. 467 (S.D.N.Y. 2019) ..................................................................... 7-8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................. 5, 11

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................. 10

*Bensky v. Indyke*,
   2024 WL 3676819 (S.D.N.Y. Aug. 5, 2024) ................................................ 9

*Buchholtz v. Renard*,
   188 F. Supp. 888 (S.D.N.Y. 1960) .......................................................... 16

*Carnegie-Mellon Univ. v. Cohill*,
   484 U.S. 343 (1988) .................................................................................. 14

*Castellano v. Bd. of Trustees*,
   937 F.2d 752 (2d Cir. 1991) ..................................................................... 14

*Clark v. Hanley*,
   89 F.4th 78 (2d Cir. 2023) ......................................................................... 10

*Ellul v. Congregation of Christian Bros.*,
   774 F.3d 791 (2d Cir. 2014) ..................................................................... 12

*Geiss v. Weinstein Co. Holdings LLC*,
   383 F. Supp. 3d 156 (S.D.N.Y. 2019) .................................................... 7-8

*Giuffre v. Andrew*,
   579 F. Supp. 3d 429 (S.D.N.Y. 2022) .................................................... 14

*Holland v. Florida*,
   560 U.S. 631 (2010) .................................................................................. 12

*Hongxia Wang v. Enlander*,
   2018 WL 1276854 (S.D.N.Y. Mar. 6, 2018) ................................... 9, 12-13

*Howell v. New York Post Co.*,
   81 N.Y.2d 115, 596 N.Y.S.2d 350, 612 N.E.2d 699 (1993) .................... 15

*In re Methyl Tertiary Butyl Ether ("MTBE") Prod. L*iab. Litig.,
    233 F.R.D. 133 (S.D.N.Y. 2005) ........................................................................ 15

*Kelly v. L.L. Cool J.*,
    145 F.R.D. 32 (S.D.N.Y. 1992) ......................................................................... 16

*Kiarie v. Dumstruck*,
    473 F. Supp. 3d 350 (S.D.N.Y. 2020) ............................................................... 10

*Kok v. First Unum Life Ins. Co.*,
    154 F. Supp. 2d 777 (S.D.N.Y. 2001) ............................................................... 15

*Kolbek v. Twenty First Century Holiness Tabernacle Church, Inc.*,
    2013 WL 6816174 (W.D. Ark. Dec. 24, 2013) .................................................... 8

*Kopec v. Coughlin*,
    922 F.2d 152 (2d Cir. 1991) ............................................................................. 11

*LaChapelle v. Torres*,
    37 F. Supp. 3d 672 (S.D.N.Y. 2014) ................................................................. 13

*Levin v. Sarah Lawrence Coll.*,
    2024 WL 4026966 (S.D.N.Y. Sept. 3, 2024) ............................................... 10, 13

*Leytman v. U. S. Dep't of Homeland Sec. Transp. Sec. Admin.*,
    804 F. App'x 78 (2d Cir. 2020) ......................................................................... 15

*Magnetic Eng'g & Mfg. Co. v. Dings Magnetic Separator Co.*,
    86 F. Supp. 13 (S.D.N.Y. 1949) .................................................................... 16-17

*Noble v. Weinstein*,
    335 F. Supp. 3d 504 (S.D.N.Y. 2018) ............................................................. 6-8

*Roofers Loc. No. 149 Pension Fund v. Amgen Inc.*,
    2024 WL 4354809 (S.D.N.Y. Sept. 30, 2024) ..................................................... 5

*Sahebdin v. Khelawan*,
    2022 WL 4451005 (E.D.N.Y. Sept. 24, 2022) ..................................................... 9

*Schneider v. OSG, LLC*,
    2024 WL 1308690 (E.D.N.Y. Mar. 27, 2024) ...................................................... 9

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
    547 F.3d 406 (2d Cir. 2008) ............................................................................... 9

*Stuto v. Fleishman*,
    164 F.3d 820 (2d Cir. 1999) ............................................................................. 15

*United Mine Workers v. Gibbs*,
   383 U.S. 715 (1966)...........................................................................14

*United States v. Raniere*,
   55 F.4th 354 (2d Cir. 2022)...............................................................8

*Vapac Music Publishing, Inc. v. Tuff 'N' Rumble Mgmt.*,
   2000 WL 1006257 (S.D.N.Y. July 19, 2000)...................................16

*Vassilatos v. Ceram Tech Int'l Ltd.*,
   1993 WL 177780 (S.D.N.Y. May 19, 1993)....................................11

*Watson v. United States*,
   865 F.3d 123 (2d Cir. 2017)..............................................................12

## <u>Statutes</u>

18 U.S.C. § 1591(a)............................................................................6

18 U.S.C. § 1591(e)(3)......................................................................7-8

18 U.S.C. § 1595(c)(1).....................................................................9-10

28 U.S.C. § 1367..............................................................................13

28 U.S.C. § 1367(a)..........................................................................13

## <u>Rules</u>

Fed. R. Civ. P. 8(a).............................................................................5

Fed. R. Civ. P. 8(c)(1).........................................................................9

Fed. R. Civ. P. 12(e).....................................................................15-16

N.Y. CPLR § 214-j............................................................................14

Plaintiff Jane Doe 11, by and through undersigned counsel, submits this memorandum of law in opposition to Defendant Henry Jarecki's Motion to Dismiss her Complaint or, in the Alternative, for a More Definite Statement (ECF No. 22), and responds as follows.

## PRELIMINARY STATEMENT

As Defendant's Motion admits, Henri Jarecki engaged in an extramarital sexual relationship with a woman more than 50 years younger than him, housed her in an apartment he owned, and bought her gifts "from time to time" until 2020. As set forth in the Complaint's well-pleaded allegations, any "relationship" Jarecki had with Plaintiff is more accurately characterized as his knowing participation in Jeffrey Epstein's sex-trafficking venture, which involved countless instances of rape and sexual assault against Plaintiff. As defense counsel well knows, whether the parties' interactions constituted a "purely consensual relationship" is a not a fact that the Court can determine in Jarecki's favor at motion to dismiss. Nor can the Court credit the delusional assertions that Jarecki (who has been married for over 60 years to the same woman) was comfortable sleeping with Plaintiff until 2012 but ended the relationship on her wedding day out his respect for the institution of marriage; or that Plaintiff's purchase of a property in another state somehow rendered a billionaire such as Jarecki powerless to exert control over her or offer her something of value. The Court should therefore deny Jarecki's Motion because it falls woefully short of Rule 12's requirements and is a transparent attempt to delay commencing discovery and having to answer the serious factual allegations levied against him.

Jarecki's arguments rest on procedural missteps and misinterpretations of the substantive arguments. Plaintiff's Complaint details Jarecki's egregious conduct, including violations under the Trafficking Victims Protection Act and related state law claims. Jarecki's Motion ignores key allegations and improperly seeks to resolve fact-specific issues prematurely.

By coming forward, Plaintiff seeks to hold Jarecki accountable for his actions and to obtain justice for the extensive harm he inflicted on her. For the reasons set forth below, this Court should deny Jarecki's Motion in its entirety.

**FACTUAL BACKGROUND**

Henry Jarecki willfully and repeatedly manipulated, abused, and raped Plaintiff, Jane Doe 11, using force, fraud, and coercion. Compl. ¶ 34, 36, 42, 44, 75. Through his involvement in Jeffrey Epstein's sex-trafficking venture and his own efforts to recruit women to sexually exploit, Jarecki used his wealth, influence, and Plaintiff's vulnerable circumstances to traffic and sexually violate her. *See id.* ¶¶ 12–23.

In search of medical treatment, safety, and support, Plaintiff was introduced to Jarecki under the pretense that he could provide psychiatric care for her depression and emotional distress caused by Jeffrey Epstein's sexual and emotional abuse. *Id.* ¶¶ 30–32. Instead, Jarecki exploited her vulnerabilities, leveraging her financial dependence and fears to exert control over her. *Id.* ¶¶ 22, 42–44, 60, 64–67. He coerced Plaintiff into staying in an apartment he owned, promising her safety, only to subject her to repeated sexual abuse while stripping her of her freedom and autonomy. *Id.* ¶¶ 41, 43, 45–47, 52. Jarecki further reinforced his control through close monitoring, threats of eviction, financial ruin, and immigration consequences, ensuring Plaintiff's compliance with his demands. *Id.* ¶¶ 22, 39, 43, 52, 60, 64–66.

Jarecki's exploitation was systematic and deliberate, involving not only repeated physical abuse but also psychological manipulation. *Id.* ¶¶ 34, 59–60. He constantly degraded Plaintiff, coerced her into demeaning sexual acts, and reinforced her dependence on him through a calculated mix of fear, control, and promises of support. *Id.* ¶¶ 58–59, 65, 70. These actions caused

Plaintiff to suffer emotional, physical, and psychological harm, which she continues to endure today. *Id.* ¶¶ 34, 59–60, 72–75, 78–79, 85–86, 92–93.

Plaintiff, a young woman and immigrant seeking to establish her modeling career in the United States, was introduced to Jeffrey Epstein under the false promise that he would assist with her career endeavors and immigration status. *Id.* ¶¶ 26–28. Epstein instead subjected Plaintiff to continuous sexual abuse, manipulation, and control, forcing her into his sex-trafficking venture. *Id.* ¶ 29; *see also id.* at 1–2.

In or around 2011, Epstein introduced Plaintiff to Jarecki, a wealthy psychiatrist and close confidant of Epstein, who "served an integral role in Epstein's sex-trafficking scheme for years." *Id.* ¶ 14; *see id.* ¶¶ 12–13, 15–16, 30. Jarecki initially presented himself as a trusted medical doctor that would help treat Plaintiff's depression caused by Epstein's abuse. *Id.* ¶¶ 30–31. In fact, Jarecki assured Plaintiff that "he had something that could make her happy right away." *Id.* ¶ 33. However, Jarecki exploited his position to further victimize Plaintiff through additional manipulation, control, and abuse. During her first meeting with Jarecki, he used the excuse of providing her with a tour of his home to aggressively push Plaintiff onto a bed and forcibly rape her against her consent. *Id.* ¶ 34.

Plaintiff found herself imprisoned between two powerful predators—Epstein, who controlled her life, career, and freedom, and Jarecki, who sought to and established similar dominance over her. *See id.* ¶ 36. When Plaintiff revealed to Epstein that Jarecki had raped her, Epstein warned her that she "had to continue to see" him. *Id.* ¶ 37. Fearing for her safety and well-being, and fully aware of the power and influence both men held, Plaintiff felt "she had no realistic or safe way to disobey." *Id.* Through his ties with Epstein, Jarecki gained access to intimate knowledge of Plaintiff's past and present, including her deep fear of Epstein. *See id* ¶ 32.

Exploiting this knowledge, Jarecki informed Plaintiff that she was no longer to see Epstein, claiming that he would "save her from Epstein"; instead, she was to have a "commercial relationship" with Jarecki. *Id.* ¶¶ 38–39. Under Jarecki's coercion, threats, and manipulation, Plaintiff believed she was powerless in comparison and feared serious bodily harm if she resisted.

For years, Jarecki used his wealth, influence, and knowledge of Plaintiff's lack of finances and impeding immigration struggles to exert complete control over her. He forced Plaintiff into moving into an apartment he owned and had direct access to which was near his house. *Id.* ¶ 45. There, he subjected her to near-daily sexual abuse and tightly monitored her activities, via telephone and camera surveillance. *Id.* ¶¶ 47–52, 64. Jarecki threatened to revoke his financial support, evict Plaintiff, and report her to immigration authorities if she did not comply with his demands. *Id.* ¶¶ 53, 56, 64–65.

As Plaintiff's mental health declined, and in complete disregard of his medical education and professional and ethical duties, Jarecki's exploitation escalated as he forced Plaintiff into degrading sexual acts, including orchestrating encounters with other men, insisting on threesomes with another young woman, and threatening to return her to Epstein if she disobeyed. *Id.* ¶¶ 58–59, 65, 70. Jarecki's abuse against Plaintiff was not limited to New York—he also transported Plaintiff to his private Caribbean Island, where the abuse continued. *Id.* ¶ 68.

Moreover, his abuse was not solely physical or sexual in nature; it was also emotional— Jarecki "would constantly tell [Plaintiff] that she was stupid and demean her as having unreasonable dreams because she had no talent as a model or actress." *Id.* ¶ 67; *see id.* ¶ 69. Jarecki raped and abused Plaintiff against her will on numerous occasions beginning as early as 2011 and

lasting through at least the end of 2014. *Id.* ¶¶ 34, 72.[1] Jarecki's conduct caused Plaintiff everlasting emotional, psychological, and physical harm. *Id.* ¶¶ 72–75, 78–79, 85–86, 92–93.

## ARGUMENT

Jarecki's Motion lacks merit and should be denied because Plaintiff's Complaint satisfies the pleading standards under Rule 8(a) of the Federal Rules of Civil Procedure. A complaint need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief," and it does not require detailed factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, Plaintiff must allege sufficient factual matter, accepted as true, to state claims that are plausible on their face. *See id.* "A claim is plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Roofers Loc. No. 149 Pension Fund v. Amgen Inc.*, 2024 WL 4354809, at *9 (S.D.N.Y. Sept. 30, 2024) (JPC). Here, Plaintiff's Complaint exceeds this standard, providing detailed allegations of Jarecki's trafficking, coercion, and abuse that, when taken as true and viewed in the light most favorable to Plaintiff, support each of her claims. Accordingly, Jarecki's Motion should be denied.

## I.    Plaintiff Adequately States A Claim Under The TVPA.

Jarecki argues that Plaintiff's claims under the TVPA are inadequately pleaded and untimely. Both arguments fail.

---

[1]  Since the Complaint's filing, Plaintiff has reviewed additional documentation that confirms she continued to interact with Jarecki through 2020 and was abused by Jarecki at least until 2017. *See* Mot. at 3 (asserting that "Plaintiff and Defendant . . . maintained a regular and cordial friendship for another eight years"). Because this does not affect the legal arguments Jarecki makes in his Motion (concerning timeliness), Plaintiff does not seek to amend her Complaint as to paragraph 72 or otherwise delay the case's schedule at this time. Plaintiff is willing, however, to stipulate that 2014 was not the last year that the Parties interacted with one another.

Here, Plaintiff sufficiently alleges that Jarecki knowingly participated in Epstein's sex-trafficking venture by using fraud, coercion, and threats to compel Plaintiff to engage in commercial sex acts. Compl. ¶¶ 12–23. These allegations meet the elements of the TVPA and adequately state a claim under the statute. Plaintiff further alleges that Jarecki provided housing and gifts in exchange for sex, threatened her immigration status, and used coercion to maintain control over her. *Id.* ¶¶ 41–43, 92.

Timeliness under the TVPA is also satisfied. The Complaint, filed on June 3, 2024, alleges actionable abuse occurring at least through December 2014, which is well within the statute of limitations. *Id.* ¶ 72. Jarecki's arguments challenging both the sufficiency and timeliness of these allegations misstate the law and ignore the Complaint's clear factual assertions.

### A.    Plaintiff Sufficiently Alleges A Commercial Sex Act.

Under Title 18 U.S.C. § 1591, the TVPA, punishes anyone who knowingly, in or affecting interstate commerce, (1) "recruits, entices, harbors, transports, provides, obtains, or maintains by any means a person," (2) "knowing . . . that means of force, threats of force, fraud, coercion . . . or any combination of such means will be used," (3) "to cause the person to engage in a commercial sex act." 18 U.S.C. § 1591(a); *see also Noble v. Weinstein*, 335 F. Supp. 3d 504, 517–19 (S.D.N.Y. 2018). In short, a TVPA claim requires a showing that the defendant knowingly benefitted from participation in a commercial sex-trafficking venture while knowing or recklessly disregarding the use of force, fraud, or coercion. *See Noble*, 335 F. Supp. 3d at 523.

By Jarecki's own admission, "he gave Plaintiff gifts from time to time." Mot. at 3 n.2; *see* Compl. ¶ 41. Yet, somehow, disregarding said admission, Jarecki's argument primarily targets the "commercial sex act" element of the TVPA, asserting that Plaintiff failed to adequately "allege any 'commercial sex act' that occurred after the Operative Date" because Plaintiff allegedly does not

plead sufficient facts to show that "anything of value" was provided in exchange for sexual acts. *Id.* at 7.

The TVPA defines commercial sex act as "any sex act, on account of which anything of value is given or received by any person." 18 U.S.C. § 1591(e)(3). Courts interpret "anything of value" broadly, encompassing money, tangible items, and intangible benefits such as career opportunities or promises of safety. *See Noble*, 335 F. Supp. 3d at 521 ("Congress's use of expansive language in defining commercial sex act—using such terms as . . . 'anything of value,' 'given to or received by any person' requires a liberal reading."). This broad interpretation recognizes that perpetrators can use fraud, coercion, or force to compel victims into commercial sex acts, with even intangible benefits qualifying as "value." *See id.* (finding that the opportunity to meet a world-renowned film producer was, in and of itself, a thing of value for an aspiring actress); *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 168 (S.D.N.Y. 2019) (finding that "something of value" includes "promises of career advancement"); *Ardolf v. Weber*, 332 F.R.D. 467, 478 (S.D.N.Y. 2019) (finding that "an invitation to a photoshoot with [the d]efendant was the ultimate opportunity and carried enormous value for aspiring models").

Plaintiff's Complaint sufficiently alleges that Jarecki engaged in a sex-trafficking venture by using force, fraud, and coercion to compel her to engage in commercial sex acts, and it provides ample support for the "anything of value" element:

- Jarecki provided Plaintiff with housing, gifts, and other things of value, such as "protection" from Epstein and medical treatment, in exchange for sex acts. Compl. ¶¶ 41, 45–47, 52, 92.
- Jarecki promised to buy Plaintiff an apartment in exchange for her compliance with his demands. *Id.* ¶ 43.
- Jarecki threatened Plaintiff's immigration status and safety to force her compliance. *Id.* ¶¶ 42, 44, 64, 92.

Jarecki attempts to analogize this case to *Kolbek v. Twenty First Century Holiness Tabernacle Church, Inc.*, 2013 WL 6816174 (W.D. Ark. Dec. 24, 2013), but such reliance is misplaced. For starters, *Kolbek* is an out of circuit case in which the court granted summary judgment because the plaintiffs failed to provide any evidence demonstrating that they deliberately accepted anything of value in exchange for sex acts. *Id.* at *16 n.16 (noting that the "[p]laintiffs have not offered any evidence or testimony at the summary judgment stage to establish that they deliberately accepted anything of value (i.e. payment of living expenses) *in exchange for* having sex with Alamo") (emphasis in original). This procedural posture is critical: unlike here, *Kolbek* was decided on a fully developed evidentiary record, not at the motion to dismiss stage, where Plaintiff's allegations must be accepted as true. Furthermore, unlike the plaintiffs in *Kolbek*, Plaintiff here has specifically alleged that Jarecki provided her with housing, gifts, promises of protection, and medical treatment in direct exchange for or "on account of" sex acts. 18 U.S.C. § 1591(e)(3); *see* Compl. ¶¶ 41–47, 52, 64, 92. These allegations demonstrate the requisite causal connection between the sex acts and the things of value, as required under the TVPA. *See United States v. Raniere*, 55 F.4th 354, 365 (2d Cir. 2022) (recognizing that "the phrase 'anything of value' need not have a monetary or financial component"); *see also Noble*, 335 F. Supp. 3d at 521.

Jarecki does not dispute his use of force, fraud, and coercion against Plaintiff but instead argues that Plaintiff failed to allege a "thing of value." Mot. at 7–10. Jarecki's contention ignores key allegations and the broad statutory interpretation of "value." As the Complaint makes clear, Jarecki leveraged both tangible (housing, gifts) and intangible (protection, promises of safety) benefits to exploit Plaintiff sexually. *See Geiss*, 383 F. Supp. 3d at 168; *Noble*, 335 F. Supp. 3d at 521; *Ardolf*, 332 F.R.D. at 478.

It comes as no surprise that despite acknowledging that "anything of value" is broadly interpreted, "encompassing not only money and tangibles but also intangibles like career opportunities," Mot. at 6–7, Jarecki refuses to accept that Plaintiff's allegations satisfy—and exceed—this standard. His own admissions corroborate the Complaint's allegations. Thus, Jarecki's arguments lack merit, and this Court should find that Plaintiff has sufficiently alleged a commercial sex act under the TVPA.

### B.    Plaintiff's TVPA Claim Is Timely.

Plaintiff's TVPA claim is not time-barred because the Complaint was timely filed on June 3, 2024. "The statute of limitations for a civil action under § 1595 is ten years." *Schneider v. OSG, LLC*, 2024 WL 1308690, at *5 (E.D.N.Y. Mar. 27, 2024); *see* 18 U.S.C. § 1595(c)(1). "[C]ourts have held that the statute ***involves a continuing tort***, so a single act occurring within the limitations period will preserve a claim based on all acts that were part of a single pattern." *Bensky v. Indyke*, 2024 WL 3676819, at *12 (S.D.N.Y. Aug. 5, 2024) (emphasis added) (quoting *Schneider*, 2024 WL 1308690, at *5); *see also Sahebdin v. Khelawan*, 2022 WL 4451005, at *5 (E.D.N.Y. Sept. 24, 2022) (holding a TVPA claim timely when filed within ten years of the "last incident" of "alleged conduct").

A statute of limitations defense is an affirmative defense that cannot serve as a basis for dismissal unless it is apparent on the face of the Complaint that the claims are untimely as a matter of law. *See Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) ("The lapse of a limitations period is an affirmative defense that a defendant must plead and prove.") (citing Fed. R. Civ. P. 8(c)(1)); *Hongxia Wang v. Enlander*, 2018 WL 1276854, at *4 (S.D.N.Y. Mar. 6, 2018). Moreover, when equitable tolling or continuing tort doctrines are invoked, such defenses require careful fact-specific inquiry, which is inappropriate for resolution at the motion to dismiss

stage. *See Levin v. Sarah Lawrence Coll.*, 2024 WL 4026966, at *17 (S.D.N.Y. Sept. 3, 2024) ("The Second Circuit has cautioned that equitable tolling 'often raises fact-specific issues premature for resolution on a Rule 12(b)(6) motion, before a plaintiff can develop the factual record.'") (quoting *Clark v. Hanley*, 89 F.4th 78, 94 (2d Cir. 2023)).

Plaintiff's Complaint here alleges a pattern of trafficking and abuse spanning from 2011 until at least December 2014. Compl. ¶ 72. Under the TVPA, a victim may bring claims within 10 years of the last act in furtherance of the trafficking venture. *See* 18 U.S.C. § 1595(c)(1). It follows that Plaintiff's claim would have been set to expire in December 2024. Under the Parties executed tolling agreement, the last incident needed to be no later than November 2013, further ensuring timeliness. In Jarecki's own Motion, he recognizes both that the TVPA provides for a 10-year statute of limitations and that the Parties entered into a tolling agreement. Mot. at 6. Therefore, Jarecki's claim that Plaintiff fails to allege acts within the limitations period is improper both factually and legally. *See id.* at 3, 6.

The Complaint contains specific allegations that Jarecki's ongoing coercion, threats, and forced commercial sex acts throughout 2013 and into at least December 2014.[2] These acts included controlling Plaintiff's housing and leveraging her immigration status to compel compliance and using promises and threats to maintain control over her. Compl. ¶¶ 45–72. These facts establish actionable violations within the limitations period.

---

[2] The allegations in the Complaint reflect Plaintiff's current knowledge of Jarecki's conduct based on available information. Plaintiff reserves the right to uncover additional acts of coercion, threats, or forced commercial sex acts occurring after December 2014 during the course of discovery. Courts recognize that discovery may reveal evidence of further misconduct beyond what is initially pleaded. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *Kiarie v. Dumstruck*, 473 F. Supp. 3d 350, 356 (S.D.N.Y. 2020).

Instead of addressing Plaintiff's well-pleaded facts head on, Jarecki attempts to use his motion to dismiss to raise factual disputes better left for discovery and more appropriately addressed at summary judgment.[3] Apparently confused by the motion to dismiss standard, Jarecki offers his own facts he believes should be taken as true, including that his "romantic relationship" with Plaintiff ended in 2012. Mot. at 1.[4] However, on a motion to dismiss, it is Plaintiff's allegations—not Jarecki's self-serving assertions—that must be taken as true. *See Ashcroft*, 556 U.S. at 678. The Complaint plainly alleges that Jarecki's abuse of Plaintiff continued until December 2014, after Jarecki's purported deadline.[5] Compl. ¶ 72. Discovery will further confirm what Jarecki knows to be true—that his abuse of Plaintiff continued well beyond 2014. Regardless, the "last incident" occurred less than ten years ago, and Plaintiff's TVPA claim is timely.

---

[3] Jarecki's reliance on additional facts outside the Complaint is improper at this stage and does not affect the validity of Plaintiff's claims. On a motion to dismiss, the Court's review is confined to the allegations within the four corners of the Complaint, as well as any documents incorporated by reference or integral to the Complaint. *See Vassilatos v. Ceram Tech Int'l Ltd.*, 1993 WL 177780 at *5 (S.D.N.Y. May 19, 1993) (reasoning that in deciding a motion to dismiss, "the Court must limit its analysis to the four corners of the complaint") (citing *Kopec v. Coughlin*, 922 F.2d 152, 154–55 (2d Cir. 1991)). Jarecki's attempt to introduce extraneous facts prematurely is not only irrelevant but underscores that such issues are more appropriately addressed during discovery, where Plaintiff will have the opportunity to obtain evidence supporting her claims and rebut Jarecki's assertions.

[4] Without delving into Jarecki's irrelevant and unfounded assertions, Jarecki places undue emphasis on Plaintiff's marriage as a matter-of-fact reason why a TVPA violation could not have occurred after 2012, while conveniently ignoring his own marital status. *See* Mot. at 3, 8. The Court should reject Jarecki's suggestion that it could take judicial notice of a marriage and hold that marriage as a reason a TVPA claim is not plausible. To state the obvious, Jarecki was himself married each and every day of his professed multi-year "consensual and openly acknowledged relationship" with Plaintiff. *Id.* at 1.

[5] Jarecki readily admits to post-2012 contact with Plaintiff, but dismissively mischaracterizes it as a "regular and cordial friendship for another eight years." *Id.* at 3.

### C.    Equitable Tolling Also Renders Plaintiff's Claims Timely.

Even if the Court were to hold in the future (it should not) that the continuing tort theory does not apply, violations occurring prior to 2013 would still be timely due to equitable tolling. *See Hongxia*, 2018 WL 1276854, at *4 ("Given the possibility of equitable tolling, a TVPRA claim is subject to dismissal based on a statute of limitations defense only if the complaint makes clear that the alleged wrongful conduct arose more than ten years before the claim was filed, and that the plaintiff has not been pursuing her rights diligently, and that no extraordinary circumstance stood in her way.") (citing *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 800 (2d Cir. 2014)). Equitable tolling is available where a plaintiff demonstrates (1) diligent pursuit of their rights and (2) extraordinary circumstances preventing timely filing. *See Holland v. Florida*, 560 U.S. 631, 649 (2010); *Watson v. United States*, 865 F.3d 123, 132 (2d Cir. 2017). Plaintiff's Complaint alleges both elements with specificity.

### 1.    Plaintiff alleges diligent pursuit of her claims.

The last of Jarecki's trafficking and abuse occurred at least as late as December 2014; the intervening years were marked by Jarecki's continued threats, coercion, and control over Plaintiff. Compl. ¶¶ 42–75. These circumstances, coupled with Plaintiff's fear of retribution from both Jarecki and the broader network of individuals associated with Epstein, prevented her from coming forward earlier. *Id.* ¶¶ 22, 37–41, 45, 64–65. Once the conditions allowed for safe pursuit of her claims, Plaintiff acted promptly, filing her Complaint within the 10-year statutory period.

### 2.    Plaintiff identifies extraordinary circumstances that justify equitable tolling.

Jarecki's coercive conduct—including leveraging Plaintiff's immigration status, financial vulnerabilities, and repeated threats of harm—placed extraordinary barriers in her path to justice. *Id.* ¶¶ 22, 34, 42–44, 60, 64–67. Courts have long recognized that fear of retaliation or safety

concerns arising from a defendant's actions can constitute extraordinary circumstances warranting equitable tolling. *See, e.g., Levin*, 2024 WL 4026966, at *17 (acknowledging that equitable tolling was appropriate where the defendant's actions deterred plaintiff from pursuing her claims). Jarecki's conduct created an environment where Plaintiff reasonably believed she had "no realistic or safe way to disobey" him or seek recourse during the relevant time. Compl. ¶ 37.

At this stage, the Court must assume the truth of Plaintiff's allegations and deny dismissal unless it is clear that equitable tolling does not apply. *See Hongxia*, 2018 WL 1276854, at *4 (finding that "dismissal of the [plaintiff's] claims is not warranted because it is not clear from the face of the Complaint that equitable tolling does not apply"). Jarecki has not and cannot meet this burden. Moreover, Plaintiff's Complaint explicitly pleads a "last incident" within the 10-year limitations period, making equitable tolling an additional safeguard—not the sole basis—for timeliness. Compl. ¶ 72. Thus, Plaintiff's claims are timely under two complementary theories: (1) the continuing tort doctrine preserves all claims as part of a single pattern of trafficking and abuse, and (2) equitable tolling applies to any claims arising before 2013 due to Jarecki's extraordinary misconduct. Accordingly, Jarecki's arguments on timeliness must fail.

## II.    Plaintiff's State Law Claims Are Valid And Should Not Be Dismissed.

The Court should deny Jarecki's request to dismiss Plaintiff's state law claims for lack of supplemental jurisdiction under 28 U.S.C. § 1367 as it rests completely on this Court first dismissing Plaintiff's TVPA claim, which as explained above, should survive Jarecki's Motion. The Court has supplemental jurisdiction over these state law claims under 28 U.S.C. § 1367(a) because they arise from the same facts as the TVPA claim and form part of the same case or controversy. Judicial economy and fairness further support retaining jurisdiction. *See LaChapelle v. Torres*, 37 F. Supp. 3d 672, 688 (S.D.N.Y. 2014) (retaining jurisdiction over state law claims because they arose from the same events as federal claims).

Jarecki unjustifiably relies on *Castellano v. Bd. of Trustees*, 937 F.2d 752 (2d Cir. 1991), *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343 (1988), and *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966), to support dismissal of Plaintiff's state law claims. These cases address discretionary dismissal of state law claims only after federal claims are dismissed, particularly early in litigation. Here, Plaintiff's federal TVPA claim is well-pleaded and should proceed, thereby providing an appropriate basis for the Court's continued exercise of supplemental jurisdiction over the state law claims.

Additionally, the principles outlined in *Carnegie-Mellon* and *Gibbs*—judicial economy, convenience, fairness, and comity—favor retaining jurisdiction. Plaintiff's state and federal claims arise from the same nucleus of operative fact, namely, Jarecki's repeated abuse, coercion, and threats over a multi-year period. Resolving these claims together promotes judicial efficiency and avoids duplicative litigation in multiple courts. Dismissing the state law claims at this stage would delay justice for Plaintiff and force her to relitigate overlapping issues in a separate forum, undermining the very notions of fairness and efficiency articulated in *Gibbs*.

Plaintiff's state law claims for sexual battery and intentional infliction of emotional distress ("IIED") are independently valid and supported by detailed allegations found in the Complaint. Further, Plaintiff brings these state law claims under New York's Adult Survivors Act (ASA), N.Y. CPLR § 214-j, which revives claims for sexual offenses that would be otherwise time barred. These claims arise from the same pattern of conduct as the TVPA claim and are supported by detailed allegations of Jarecki's intentional and repeated sexual abuse.

While "[D]efendant does not directly contest whether [P]laintiff's allegations satisfy the elements" of battery and IIED under New York law, this Court should find that Plaintiff's Complaint sufficiently states a claim for both causes of action. *Giuffre v. Andrew*, 579 F. Supp. 3d

429, 450 (S.D.N.Y. 2022). To state a claim for battery under New York law, Plaintiff must simply allege that there was "bodily contact, that the contact was offensive, and that [D]efendant intended to make the contact without [her] consent." *Leytman v. U. S. Dep't of Homeland Sec. Transp. Sec. Admin.*, 804 F. App'x 78, 80 (2d Cir. 2020). Here, Plaintiff alleges repeated, unwanted sexual contact by Jarecki, conducted through coercion and threats, without her consent. These allegations satisfy the elements of battery. Compl. ¶¶ 34, 73–80.

Similarly, Plaintiff sufficiently states a claim for IIED. To state an IIED claim under New York law, a plaintiff must allege "(1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999) (citing *Howell v. New York Post Co.*, 81 N.Y.2d 115, 121, 596 N.Y.S.2d 350, 353, 612 N.E.2d 699 (1993)). Plaintiff alleges Jarecki engaged in extreme and outrageous conduct by repeatedly abusing her, threatening her safety, and leveraging her vulnerabilities to maintain control over her. Compl. ¶¶ 22, 34, 44, 65, 67. The Complaint further alleges that this conduct caused severe emotional distress, which Plaintiff continues to endure. *Id.* ¶¶ 60, 65, 67, 69, 71, 79, 81–87. These allegations are more than sufficient to state an IIED claim.

### III. Jarecki's Request For A More Definite Statement Is Unwarranted.

Jarecki's alternative request for a more definite statement under Federal Rule of Civil Procedure 12(e) is baseless. A motion pursuant to Rule 12(e) should not be granted "unless the complaint is so excessively vague and ambiguous as to be unintelligible and as to prejudice the defendant seriously in attempting to answer it." *Kok v. First Unum Life Ins. Co.*, 154 F. Supp. 2d 777, 781–82 (S.D.N.Y. 2001). Such motions are disfavored because they unnecessarily delay proceedings. *See In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*, 233 F.R.D. 133, 134–35 (S.D.N.Y. 2005) ("Motions for a more definite statement are generally disfavored because

of their dilatory effect. The preferred course is to encourage the use of discovery procedures to apprise the parties of the factual basis of the claims made in the pleadings.").

Here, Jarecki argues that Plaintiff should be ordered to "amend the Complaint to specifically identify the dates of the alleged conduct forming the basis of her TVPA claim." Mot. at 11. However, the Complaint provides ample detail to allow Jarecki to prepare a responsive pleading. Plaintiff specifies dates, locations, and the nature of Jarecki's conduct, including threats, coercion, and acts of sexual abuse. Compl. ¶¶ 31–72, 92(a)–(g). Rule 12(e) is reserved for complaints so vague that a defendant cannot frame an answer. *See Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 35 (S.D.N.Y. 1992). Jarecki is not prejudiced in formulating a response but instead seeks to relitigate the adequacy of the allegations through Rule 12(e). Jarecki's mere disagreement with Plaintiff's characterization of events does not render the Complaint deficient. *See Vapac Music Publishing, Inc. v. Tuff 'N' Rumble Mgmt.*, 2000 WL 1006257 *6 (S.D.N.Y. July 19, 2000) (finding that Rule 12(e) is designed "to strike at unintelligibility rather than want of detail and . . . allegations that are unclear due to a lack of specificity are more appropriately clarified by discovery rather than by an order for a more definite statement").

Jarecki's reliance on *Buchholtz v. Renard*, 188 F. Supp. 888 (S.D.N.Y. 1960), and *Magnetic Eng'g & Mfg. Co. v. Dings Magnetic Separator Co.*, 86 F. Supp. 13 (S.D.N.Y. 1949), misses the mark. In *Buchholtz*, the court ordered a more definite statement to enable a determination of the applicability of the statute of limitations, as the complaint entirely failed to specify when the "plaintiffs received delivery of the stock of [the] defendant" as that was a critical fact in both the plaintiff's claim and the defendants' defense. Here, Plaintiff's Complaint provides a detailed timeline of Jarecki's conduct, including allegations spanning from 2011 to 2014, with

16

the abuse continuing at least until December 2014. Compl. ¶ 72. The timeline is sufficient for Jarecki to assess any potential statute of limitations defense, making *Buchholtz* inapposite.

Similarly, in *Magnetic Eng'g*, the court ordered a more definite statement where the plaintiff's antitrust claims lacked sufficient specificity to articulate the alleged violations, including "identifying by name and date all prior patents and publications to be relied upon." *Magnetic Eng'g*, 86 F. Supp. at 15. Unlike the complaint in *Magnetic Eng'g*, Plaintiff's Complaint here sets forth the necessary elements of her claims under the TVPA and state law with detailed allegations of Jarecki's conduct, threats, and coercion. The specificity provided here far exceeds the deficiencies addressed in *Magnetic Eng'g*.

Jarecki's reliance on these cases does not move the needle, and his request for a more definite statement should be denied.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Jarecki's Motion to Dismiss and alternative request for a more definite statement.

Dated: December 13, 2024                    Respectfully submitted,

EDWARDS HENDERSON                           BOIES SCHILLER FLEXNER LLP

Bradley J. Edwards
Britanny N. Henderson                       By: /s/*Sigrid McCawley*
425 N. Andrews Avenue                           Sigrid McCawley
Fort Lauderdale, FL 33301
Telephone: (954) 524-2822                   David Boies
Fax: (954) 524-2822                         Andrew Villacastin
brad@cvlf.com                               BOIES SCHILLER FLEXNER LLP
brittany@cvlf.com                           55 Hudson Yards 20th Floor
ecf@cvlf.com                                New York, NY 10001
                                            Telephone: (212) 446-2300

Fax: (212) 446-2350
dboies@bsfllp.com
avillacastin@bsfllp.com

Sigrid McCawley
BOIES SCHILLER FLEXNER LLP
401 E. Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33316
Telephone: (954) 356-0011
Fax: (954) 356-0022
smccawley@bsfllp.com

*Attorneys for Plaintiff*